IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.   ) | No.   1:21-cr-115 (CRC) |
| ) | |
| EDUARDO NICOLAS   ) | |
| ALVEAR GONZALEZ   ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

Terminating the defendant's, Eduardo Gonzalez, probation eight months early after his violations would simply reward him for his lack of compliance. His conduct, while technical in nature, strikes at the historic, basic purpose of probation: "to provide an individualized program offering . . . an opportunity to rehabilitate [the defendant] without institutional confinement under the tutelage of a probation official and under the continuing power of the court to impose institutional punishment for his original offense in the event that he abuse this opportunity." *Roberts v. United States*, 320 U.S. 264, 272 (1943). The defendant abused his opportunity by repeatedly refusing to listen to his probation official. His conduct warrants, at the very least, additional probation time.

The statute governing probation, 18 U.S.C. § 3563, connects the purposes of probation conditions to the purposes of punishment in 18 U.S.C. § 3553(a), including requiring that any discretionary conditions reflect the "nature and circumstances of the offense," and the need for the sentence imposed to "reflect the seriousness of the offense, to promote respect for the law," and to "afford adequate deterrence to criminal conduct." And Chief Judge Boasberg has made clear that defendants, even misdemeanants, involved in January 6 did not commit "negligent infractions," but serious ones that warrant restrictions on those defendants' liberties. *See United States v. Shaw*, No. CR 22-1 (JEB), 2023 WL 3619416, at *2 (D.D.C. May 24, 2023) ("[W]hile Shaw's role in the

mob was minor, the fact of his participation in an insurrection whose aim was to impair the peaceful transfer of power suggests that a firearms restriction during his probationary period is appropriate.").

Here, the defendant sought and received permission to travel from California to Nashville, Tennessee for the limited time period of February 22 to March 22, 2023, and for the limited purpose of his employment. ECF 57 at 5. By April 27, when Probation petitioned the Court for a warrant, Gonzalez had still not returned to California. In fact, Gonzalez had already applied for, got approved for, and signed for a new apartment lease in Nashville—all without going through Probation. It is clear Gonzalez had no intention of returning to California as required. While he now claims this was a product of confusion, the defendant's messages reflect an understanding of his conditions of release enough to debate with his probation officer on whether he needed to listen to her. Despite multiple commands from probation to return, Gonzalez repeatedly refused. A portion of his text messages with his probation officer are attached as Exhibit One. A list of her commands he ignored include:

- March 9, 2023: "Nashville is going to have to do an investigation. That can take up to six weeks. You can't reside there without their permission."

- March 28, 2023: "Did you put down deposit for the apartment in Nashville? I'm on the phone with District of TN. It will take 30-45 days for them to inspect and investigate. They made it clear you can not be in Nashville until you receive approval to live their or denial."

- March 28, 2023: "I told you that you cannot reside there without TN permission. You are now in violation for being in TN without my permission and theirs."

- March 29, 2023: "I have notified the court about your violation and I am waiting to hear back from you judge on how to proceed."

- April 4, 2023: "District of TN stated you can't relocate there before they approve you."

It is of no moment that probation may have generally known that Gonzalez was in Nashville. Gonzalez abused his probation officer's approval for temporary work travel and relocated himself across the country, effectively rendering supervision impossible. According to the standard conditions of Gonzalez's probation, he "must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission" and "must live at a place approved by the probation officer." ECF 52 at 3. Indeed, to change where he lives, he "must notify the probation officer at least 10 days before the change." These conditions are fundamental to probation's ability to successfully supervise a defendant's compliance with the Court's rules, and he followed none of them.

Furthermore, after his arrest and release in the probationary matter, he has posted videos online reflecting a complete lack of remorse. In one of his videos, which the government has previously provided as Exhibit 2, he:

- Discussed his conduct, the fraudulent election he defended against, and D.C. being the only place that cares about his conduct (3:30 to 7:00 and then 15:00 on);
- Posted a video of his arrest by the US Marshals (28:00);
- Discussed receiving a tip from "someone close to" the Court to hire a particular lawyer, suggesting he should not discuss this fact out loud; and
- Listed his probation officer's name, including both her married name and maiden name (48:00).

These are not the actions of an individual who has successfully completed probation. Terminating his probation early would not serve the interests of probation, including reflecting the seriousness of his offense, providing adequate deterrence to future defendants, promoting respect for the law.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar Number 481052

By: _____
Troy A. Edwards, Jr.
Assistant United States Attorney
N.Y. Bar No. 5453741
U.S. Attorney's Office,
District of Columbia
601 D Street NW
Washington, D.C. 20530

Dated: July 18, 2023